---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

### No.  25-3520

---

**In re:  DIAMONDHEAD CASINO CORPORATION, DEBTOR**

**DEBORAH A. VITALE**
Appellant,
v.
**EDSON ARNEAULT, et al.,**
Appellees.

---

**On Appeal from the United States District Court
for the District of Delaware
Case Nos. 1:25-cv-01022-MN and 1:25-cv-01167-MN**

---

## APPELLANT'S EMERGENCY MOTION
## FOR STAY PENDING APPEAL

DEBORAH A. VITALE
Appellant, Pro Se
1013 Princess Street
Alexandria, Virginia 22314
Telephone: (727) 510-1412
Email: vitaledav@aol.com

January 6, 2026

1

Appellant respectfully moves for an emergency stay pending appeal, pursuant to Federal Rule of Appellate Procedure 8(a)(2). On December 3, 2025, the District Court denied Appellant's motions for stay pending appeal. An auction of the Debtor's primary asset is scheduled for January 26, 2026. Absent immediate relief, the appeal will be rendered moot under 11 U.S.C. §363(m). This case satisfies all four factors under *In re Revel AC, Inc*., 802 F.3d 558 (3d Cir. 2015). A stay is necessary to preserve any meaningful appellate review.

## JURISDICTIONAL STATEMENT

The District Court exercised jurisdiction under 28 U.S.C. §158(a). This Court has jurisdiction under 28 U.S.C. §158(d)(1), which provides for appeals as of right from final judgments, orders and decrees entered by a District Court sitting in its bankruptcy appellate capacity. The Orders denying a stay pending appeal are final, appealable orders. A timely Notice of Appeal was filed on December 16, 2025, within the fourteen day period required by Fed. R Bankr. P. 8002(a). Appellant complied with Federal Rule of Appellate Procedure 8(a)(1) by first seeking relief in the District Court.

## STATEMENT OF EMERGENCY

The Chapter 7 Trustee has scheduled an auction to sell the Debtor's 400-acre Diamondhead, Mississippi, property on **January 26, 2026**. [Bankr. D.I. 164]. Absent a stay, the Debtor's primary asset will be irreversibly transferred to a third-

party purchaser under 11 U.S.C. §363(m), mooting this appeal and any meaningful appellate review. The Debtor's SEC registration will be lost, the equity of approximately 2,000 shareholders and Debtor's ESOP beneficiaries will be completely wiped out, and Appellant's secured and unsecured claims, equity interests, and professional reputation will suffer irreversible harm. Once the auction occurs, no later appellate ruling can restore the status quo.

## REQUEST FOR IMMEDIATE ADMINISTRATIVE RELIEF

If the motions panel cannot act before the auction date, Appellant requests temporary administrative relief, pursuant to Federal Rule of Appellate Procedure 8(a)(2)(D) and 27(c), to preserve the status quo until the panel can consider this motion. Without temporary relief, the underlying sale will take effect before the motions panel can rule, thereby mooting the appeal, eliminating any meaningful appellate review, and causing irreparable prejudice to Appellant's rights.

## RELEVANT PROCEDURAL HISTORY

On June 12, 2024, Petitioning Creditors, Appellees herein, filed an Involuntary Chapter 7 Petition against the Debtor, Diamondhead Casino Corporation. [Bankr. D.I. 1]. On July 18, 2024, the Debtor filed a Motion to Dismiss the Involuntary Petition or, in the Alternative, to Convert the Case to a Chapter 11. [Bankr. D.I. 9]. On December 5, 2024 and January 16, 2025, the Bankruptcy Court held a hearing on the motion. [Bankr. D.I. 25 and 32]

On July 30, 2025, the Court entered an Opinion and Order <u>denying</u> the Debtor's Motion to Dismiss the Involuntary Bankruptcy Petition or, in the Alternative, to Convert the Case to Chapter 11. [Bankr. D.I. 42 and D.I. 43].

On July 31, 2025, the Court entered an Order for Relief in an Involuntary Case. [Bankr. D.I. 45]. On August 1, 2025, the Court appointed an Interim Trustee. [Bankr. D.I. 46]

On August 13, 2025, the Appellant filed a timely Notice of Appeal [Bankr. D.I. 57] from Orders then-entered by the Bankruptcy Court initiating District Court Case No. 1:25-cv-01022-MN. The Appellant also moved for a stay pending appeal. [Bankr. D.I. 47, D.I. 55].

On September 3, 2025, the Bankruptcy Court denied all stay-related motions finding that only the Trustee had standing to file a motion for a stay pending appeal. On the same date, the Court also denied all then-outstanding motions relating to the Court's underlying Opinion and Order for Relief under the "divestiture of jurisdiction rule," concluding that the issues raised were on appeal to the District Court. [Bankr. D.I. 85, TR. 9-3-25, at p. 92]  On September 4, 2025, the Bankruptcy Court entered the Order Denying all then-outstanding Motions. [Bankr. D.I. 89]

 On September 17, 2025, Appellant filed a second Notice of Appeal adding the Order of September 4, 2025 to the Orders previously appealed from, initiating Case No. 1:25-cv-01167-MN.

On October 21, 2025, Appellant filed emergency motions for a stay pending appeal in both District Court cases.  On December 3, 2025, the District Court <u>denied</u> Appellant's emergency motions for stay pending appeal.

On December 16, 2025, Appellant filed a timely Notice of Appeal to this Court.

## ARGUMENT

This appeal presents serious issues relating to the subject-matter jurisdiction of the Bankruptcy Court and underlying factual and legal basis for entry of the Order for Relief.  A stay pending appeal is warranted under the four-factor test articulated in *In re Revel AC, Inc*, 802 F.3d 558 (3d Cir. 2015), to preserve the status quo pending appeal.

The District Court misapplied the first two *Revel* factors and, therefore, never reached the third and fourth factors. Properly applied, all four factors strongly favor a stay because the imminent §363(m) sale will moot the appeal.

## I.    APPELLANT IS LIKELY TO SUCCEED ON THE MERITS

## A.    The Bankruptcy Court Lacked Subject Matter Jurisdiction Under §303(b)

Petitioners filed an Involuntary Chapter 7 Petition based on a judgment obtained in *Arneault, et al, v. Diamondhead Casino Corporation* (C.A. No. 1:16-cv-00989-LPS)(D. Del. 2016)("the Collection Case"). However, the judgment is void under Fed. R. Civ. P. 60(b)(4) because the District Court lacked subject-matter

jurisdiction when the Complaint was filed. A void judgment cannot create a "noncontingent, undisputed claim under 11 U.S.C. §303(b) and, therefore, cannot satisfy the statutory prerequisites for an involuntary petition.

Because all eight Petitioners relied on the same void judgment, none satisfied §303(b)'s jurisdictional prerequisites. The Bankruptcy Court, therefore, lacked statutory authority to enter an Order for Relief and the involuntary case must be dismissed.

The District Court acknowledged that the Bankruptcy Court did not address Appellant's §303(b) subject matter challenge *on the merits,* deeming it to be "immaterial" because "even if one creditor is disqualified, seven remain." This was clear error. All eight Petitioners relied on the same void judgment. If the judgment is void, all Petitioners are disqualified, the Petition fails as a matter of law, and the Order for Relief must be vacated.

The District Court found that Appellant lacked standing to challenge the judgment and that only the Trustee had standing to do so. [Memorandum Opinion, at p. 18] However, Bankruptcy Courts and District Courts have an affirmative obligation to address subject matter jurisdiction *sua sponte. In re QDN LLC*, 363 F. App'x 873 (3d Cir. 2010). Their obligation to do so does not depend on whether the Trustee decides to pursue the issue.

On November 12, 2025, Appellant filed a Motion to Reopen Action, Vacate Judgment, and Dismiss Action in *Arneault, et al, v. Diamondhead Casino Corporation* (C.A. No. 1:16-cv-00989-LPS)(D. Del. 2016) for lack of subject-matter jurisdiction, together with a Memorandum of Law in Support of the Motion and exhibits thereto [D.I. 80, 80-1 and 80-2] and a Declaration [D.I. 81]. Appellant requested that the Court review the matter, *sua sponte*, if necessary.

On November 21, 2025, the Trustee filed a motion to strike based on Appellant's alleged lack of standing. [D.I. 83] On November 25, 2025, Petitioners filed an Opposition. [D.I. 84]. Appellant filed a Reply to Petitioners' Opposition [D.I. 89] and an Opposition to the Trustee's motion to strike [D.I. 90]. The matter has been fully briefed and the motions are pending. A stay is necessary to allow the District Court to review this potentially dispositive matter.

## B. The District Court Erred in Holding That Appellant Lacked Standing to Seek a Stay Pending Appeal

The District Court erred in holding that Appellant lacked standing to seek a stay based on 11 U.S.C. §303(d). Section 303(d) deals with standing to contest an involuntary petition *in the bankruptcy court*. Under §303(d), standing to do so is limited to the Debtor. Section 303(d) does not govern who may appeal an Order for Relief or seek a stay pending appeal.

Here, Appellant is appealing a final Order for Relief entered under 28 U.S.C. §158(a) and seeking a stay of that Order. Standing to do so is governed by this

Circuit's "person aggrieved" standard. *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)(the "person aggrieved" doctrine governs appellate standing to appeal from an Order for Relief in bankruptcy cases.) Under *Dykes*, a "person aggrieved" is one whose rights or interests are directly and adversely affected pecuniarily. Appellant is the Debtor's largest creditor, a major shareholder, its only employee, and sole Trustee of the ESOP. As detailed in her Declaration filed in the District Court, her pecuniary and other interests are directly and adversely harmed by the Order for Relief. She clearly satisfies the "person aggrieved" standard. By applying the §303(d) test, instead of the "person aggrieved" test, the District Court misapplied controlling Third Circuit precedent.

The District Court also erred in conflating authority to act *on behalf of the Debtor,* with Appellant's standing to appeal in her own right. Therefore, the District Court's reliance on cases that address who may act *for the debtor,* is misplaced. Here, Appellant filed an appeal from an Order for Relief and, incident thereto, an emergency motion for a stay, in her own name, on her own behalf, as a "person aggrieved."

## C. The District Court Erred in Holding That Only the Trustee May Seek a Stay

The District Court erred in holding that only the trustee may seek a stay pending appeal. There is no statute that limits stay motions to trustees. Congress knows how to limit standing when it chooses to do so, as it did in §303(d). Congress

imposed no comparable statutory limitation on stay motions and Bankruptcy Rule 8007 contains no such limitation.

A trustee-only rule would also be unconstitutional as applied. A Chapter 7 trustee is compensated through percentage commissions tied to liquidation. The trustee earns nothing if he stays liquidation. He has every financial incentive to liquidate quickly and no financial incentive to stay liquidation, let alone, the Order for Relief that creates his trusteeship. Under the District Court's ruling, the only person authorized to seek a stay is the one who has no financial incentive to do so.

A trustee-only rule would also allow a financially interested actor, by simply declining to act, to deprive a "person aggrieved" of any meaningful opportunity to be heard and insulate bankruptcy orders from appellate review. To avoid this unconstitutional result, "persons aggrieved" must be permitted to seek a stay pending appeal. Otherwise, the trustee would control whether a "person aggrieved" could obtain any effective appellate relief at all, a result the Bankruptcy Code does not authorize and the Constitution does not tolerate.

## D. The Bankruptcy Court's Valuation Errors Require Reversal

Appellant is likely to succeed on the merits because the Bankruptcy Court 's insolvency finding and entry of a Chapter 7 Order for Relief, rests on a series of clear factual and legal errors that were outcome-determinative. The Court (i) misread the debtor's Form 10-Q, (ii) equated "cost" with "market value," (iii) improperly took

judicial notice of a "fact" not contained in the Form 10-Q, and (iv) disregarded uncontroverted valuation evidence in the record.

**1. The Bankruptcy Court Misread the Debtor's Form 10-Q and Equated the Cost of Property in 1993 with its Market Value in 2024**

The Bankruptcy Court found, based on a misreading of the Debtor's Form 10-Q, that the Debtor "lists **the value of its land holdings** at $4,691,430." (Emphasis added.)[Opinion, Bankr. D.I. 42, p. 5] This factual finding was clearly erroneous. The Form 10-Q does not list the "value" of the Debtor's land holdings. The Form 10-Q expressly states:

> "Land held for development is carried at **cost.** (Emphasis added.)(Form 10-Q: September 30, 2024, at p. 7).

Under Generally Accepted Accounting Principles ("GAAP"), publicly traded companies may not revalue land upward. Thus, the book value of land is commonly known to be grossly understated. The Debtor's Diamondhead Property was purchased in 1993. Thus, equating its cost with market value in 2024, over three decades later, was clear error. Fair market value, not cost, is the proper measure for collateral under §506(a). *In re Heritage Highgate, Inc*., 689 F.3d 132, 142 (3d Cir. 2012). A valuation based on an improper legal standard is reversible error.

**2. The Bankruptcy Court Erred in Taking Judicial Notice of Value**

The Bankruptcy Court further erred in taking judicial notice of the supposed "value" of the Debtor's land. Fed. R. Evid. 201 allows a court to judicially notice a

fact that is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. The *market value* of the Diamondhead, <u>Mississippi</u> Property was not "generally known" in Delaware. Nor could it be accurately determined from a Form 10-Q, which did not even report it.

The Court also clearly erred in taking judicial notice of this dispositive fact in its <u>Opinion</u>, issued long after the evidentiary hearings were held, and without notice to the Debtor. This violated Rule 201(e), which entitles a party "to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." This obvious and egregious error would have been avoided had Debtor been notified, in advance, of the Court's intention.

## 3. The Bankruptcy Court Ignored Uncontroverted Valuation Evidence

The Court's $4.6 million "valuation" based on cost, is contrary to the evidence presented, which only underscores the magnitude of the Court's error.   The undisputed testimonial evidence presented established a market value for the entire Diamondhead property of between $40 and $60 million. It included the following:

i)    The Vice President of Colliers International testified that after extensive due diligence, Colliers placed the Diamondhead Property on the market for sale at $60 million in April/May 2024. [Bankr. TR I: 19:18-20; Joint Exhibit 25].

ii)     Appellant, the Debtor's President and CEO, who had decades of development experience in Mississippi, testified that the Company's "casino property [the fifty-acre site approved for a casino] is a million an acre. There's no doubt about that." [Bankr. TRI: 116:11-13].

iii)    Mr. Harrison, the Debtor's Chairman, testified that the Company had a Letter of Intent from a group that offered $40 million "[t]o buy the land." [Bankr. TRI: 72:1-3] and "[p]roof of funds has been satisfied."(Bankr. TRI: 71:10-16) and that Ms. Vitale was on her seventh draft of a purchase agreement for a $50 million deal ("the Bruce" deal) which ended with the involuntary petition. (Bankr. TRI: 72:16-19).

Under Fed. R. Evid 701, business owners and officers may testify as to value without being qualified as experts. See, *Lightning Lube, Inc. v. Witco Corp*. 4 F.3d 1153 (3rd Cir. 1993). The Petitioners offered no evidence as to valuation.

Debtor also submitted documentary evidence as to the value of the Property. Petitioners did not object to these exhibits, which were submitted as "Joint" Exhibits. These included" i) Joint Ex. 64: Phoenix Gaming and Entertainment Letter of Intent to buy 25 acres of the gaming Property for $1 million per acre; and ii) Joint Ex. 28: Form 8-K filed with the SEC, dated April 3, 2023: Entry into a Material Definitive Agreement for the purchase of 10% of the common stock of Mississippi Gaming Corporation for $6 million. Like the Colliers' valuation, $6 million for 10% of the

stock of the subsidiary which owns the Diamondhead Property, its only asset, equates to a $60 million valuation for 100% of the subsidiary.

The Debtor attempted to introduce one valuation report and two appraisals performed between 2015 and 2024, but Petitioners objected to their introduction. They were admitted as evidence solely to show that the Debtor and Mississippi Gaming Corporation received and relied on them, but not to prove the value of the Property. [Bankr. Ex. 1, Ex. 2 and Ex. 3] These ranged from $39.5 million in 2015, to $54.86 million in 2019; and to $55.2 million in 2024. The testimony showed that the Debtor and management relied on the appraisals to structure and price deals, that counsel for Petitioners and the Petitioner Arneault requested and were provided with copies of the latest 2024 appraisal to send to interested prospects, and that the Debtor and Petitioners relied on the draft CBRE appraisal in 2015 to price their Tranche III debentures. The use of appraisals is common and accepted in financial and real estate matters.

The Bankruptcy Court ignored all of the foregoing testimonial and documentary evidence and, instead, relied on its own clearly erroneous valuation based on the cost of the Property over three decades earlier. Because the insolvency analysis and Order for Relief rests on a clearly erroneous finding of fact and an incorrect legal analysis, based on cost, rather than market value, Appellant has demonstrated a strong likelihood of success on the merits.

**E. The Bankruptcy Court Ignored Clear Evidence of Bad Faith**

The Bankruptcy Court erred in failing to dismiss the Petition for bad faith. The record contains undisputed evidence demonstrating that Petitioners used the threat of involuntary bankruptcy as leverage. Counsel for Petitioners testified at trial that Petitioners would <u>not</u> have filed the Chapter 7 Involuntary Petition had the Debtor agreed, during a conference call on November 21, 2023, to pay $50,000 more in additional attorneys' fees, but Ms. Vitale refused to do so. [Bankr. TRII. 1-16-25, p. 54] This, after the Debtor had already agreed to pay $175,000 in attorneys' fees only *sixty-two days earlier* to settle *Arneault, et al. v. Diamondhead Casino Corporation* (C.A. No. 1:16-cv-00989-LPS)(D. Del. 2016). The Petitioners were admittedly using the threat of an involuntary bankruptcy to extract even more legal fees from Debtor.

The documentary evidence introduced at trial also showed that Petitioners were never concerned about their security or the dissipation of assets. They were more than willing to forebear, provided they were paid to do so.  On June 2, 2023, counsel for Petitioners threatened the Debtor with bankruptcy so as to cash in on the proceeds of an eminent domain settlement for $1 million obtained by Mississippi Gaming Corporation, a subsidiary of the Debtor. [Bankr. Ex. 48] The Company needed these settlement funds to survive and had borrowed against the anticipated settlement.

Counsel for the Debtor demanded what amounted to one hundred percent of the eminent domain funds, if a deal then pending, evidenced in Bankr. Joint Ex. 28, did not close. This payment would have forced the Company into certain bankruptcy and constituted a preference payment. The Petitioners would readily forebear, provided they got paid ahead of any other creditors, including five debenture holders who shared a first lien with Petitioners, and ahead of their co-lien holder, Appellant herein, with whom they were allegedly in *pari passu*. This pre-petition behavior is the epitome of bad faith which should have resulted in a dismissal of the Petition, but the Bankruptcy Court failed to address it.

## F.    The Bankruptcy Court Erred in Failing to Consider Available State Remedies

The Debtor maintained that Petitioners had state remedies available to collect their judgment. The Debtor also maintained that Petitioners had used the bankruptcy process for an improper purpose, namely, to circumvent the Land Deed of Trust, which expressly provided for a judicial foreclosure action in <u>Mississippi</u> in the event of a default, identified the procedures to be followed in the event of a default, and specifically named the Mississippi Trustee, who would handle any sale in the event of a default.

The Bankruptcy Court clearly erred in finding that the Debtor abandoned this argument in its *post-trial Opening Brief,* when a reading of the brief confirms just the opposite. Section B of the brief is entitled "The Petition Should Be Dismissed

Inasmuch as There Are State Remedies Available for Petitioners to Collect Their Debt." [Bankr. D.I. 38, pp. 20-21]. This section specifically deals with the remedy provided in the Mississippi Land Deed of Trust, which Petitioners agreed to when they signed the deal, and concludes: "The Petitioners have a myriad of state law remedies available to them to collect their debt. They do not need the protections of a Bankruptcy Court." *Id*. at p. 21.

The Bankruptcy Court also clearly erred in finding that "no evidence was presented regarding the Land Deed of Trust." The record confirms that the Land Deed of Trust was admitted in evidence as Joint Exhibit 8 and Joint Exhibit 45.

The Bankruptcy Court's failure to consider the state-law remedies' argument, despite the issue being fully briefed and the Land Deed of Trust being admitted in evidence, constitutes reversible error because it directly affected the Court's determination as to whether the Petition was filed for a proper purpose and in good faith.

The Bankruptcy Court's Opinion contains other clear errors of fact and conclusions of law that cannot be addressed here due to the word limitation that applies to this motion, which further underscores the need for a stay pending appeal.

## II.   APPELLANT WILL SUFFER IRREPARABLE HARM ABSENT A STAY

Irreparable harm is established where the movant demonstrates that, absent a stay, injury is "more apt to occur than not." *In re Revel AC, Inc*., 802 F.3d 558, 569

(3d Cir. 2015) Appellant easily satisfies this standard. The harm here is not "speculative." On the contrary, it is imminent, concrete, irreversible, and already occurring.

## A.  A Sale Under §363(m) Will Moot the Appeal

As in *Revel*, the District Court's denial of a stay, coupled with the imminent sale of the Diamondhead Property under §363(m), will render this appeal moot. Under *Revel*, the loss of appellate rights, as a result of §363 mootness, constitutes irreparable harm as a matter of law. *Revel*, at 567-69.

## B.  The Harm is Immediate and Concrete

Once the auction occurs, the Debtor's primary asset will be sold, the Debtor's SEC registration as a publicly traded company will be lost, the equity of approximately 2,000 shareholders and 300 ESOP beneficiaries will be totally wiped out, and Appellant's claims, equity interests and reputational interests will be irreversibly harmed. Here, the practical effect of denying a stay is to resolve the appeal in favor of Appellees on the merits. This is the textbook definition of irreparable harm.

A stay is required in this case to halt the liquidation of the Debtor's property. Without a stay, liquidation would permanently transfer assets. Absent a stay, there would be no way for the Debtor to recover its Diamondhead Property, once liquidated. If the Property is sold in an arm's-length transaction, all stakeholders,

including the Appellant, and all creditors will be paid in full and the shareholders will enjoy a substantial appreciation in the value of their stock. However, if the Property is sold at auction in a Chapter 7 liquidation, the Debtor and, in particular, this Appellant, will lose, not only their investment in the Debtor, but also the opportunity to sell or monetize the Property in an arm's-length transaction, as they were in the process of doing with Colliers International, when the Petition herein was filed.[1] A stay is the only way of protecting Appellant and all of the Debtor's stakeholders from harm pending a resolution of the issues in this case.

Already, potential purchasers and investors who were dealing with the Company in arm's length negotiations are taking advantage of the bankruptcy situation by trying to obtain the Property at bargain basement prices. Trading in the Debtor's stock has been halted by some brokerage firms. The Company has approximately thirty-six million shares of common stock issued and outstanding. The Debtor's stock price has plummeted from approximately $ .25 per share when the Petition was filed to virtually nothing. Millions of dollars have been lost. A stay will halt this diminution pending a decision on the merits which, if successful, will

---

[1] Debtor maintained that there was no purpose to be served by a Chapter 7 because the Debtor had retained Colliers International to market and sell the property and there was nothing a Chapter 7 Trustee could do that was not already being done and that a Chapter 7 would only add substantial costs, fees, and expenses to the process. Ironically, after being appointed, the Trustee rehired Colliers International to do what Debtor was already doing when the Petition was filed.

resurrect the stock price. The officers and directors of the Company and, in particular, this Appellant, have already suffered damage to their reputations which can only lead to further embarrassment and loss of future employment and opportunities. Without a full review on the merits, their reputations cannot possibly be restored.

All stakeholders benefit from a stay pending a resolution of this case on the merits inasmuch as it maintains the status quo, preserves the continued existence of the Debtor, preserves the Debtor's registration status and avoids a distress sale of its Property at auction. The harm posed by the absence of a stay to the Debtor substantially outweighs any possible potential harm to the Petitioners.

## III.   A STAY PENDING APPEAL WILL NOT SUBSTANTIALLY INJURE OTHER PARTIES

### A. Petitioners are Secured With a First Lien

Under the third *Revel* factor, the stay opponent must show actual, non-speculative, substantial injury. Petitioners' claims are secured, their collateral position is protected, and any alleged injury is limited to a temporary delay which does not qualify as substantial injury.

Petitioners filed claims for approximately $2.422 million, most of which, is secured by a first lien on the Diamondhead Property, last appraised in January 2024 at $55.2 million. Petitioners' collateral consists of raw land, not a wasting or

dissipating asset. A stay does not impair Petitioners' lien, diminish their priority, or threaten their ultimate recovery.

The District Court's conclusion, that creditors are harmed by delay, ignores the nature of Petitioners' investment. Petitioners, all accredited investors, purchased high risk, illiquid debentures in a private placement of unregistered securities. As is common in such private placements, Petitioners represented and warranted that they could absorb the total loss of their investment and were willing to hold their debentures indefinitely. Having assumed the risk of illiquidity and indefinite delay, Petitioners cannot plausibly claim that a temporary delay constitutes substantial injury. Even the Bankruptcy Court questioned whether Petitioners would be harmed by a delay when it asked: "What is the harm to the creditors? … It's been 20 years, what is another year?" [Bankr. D.I. 85, TR. 9-3-25, pp. 41-42].

## B.  The Balance of Harms Strongly Favors Appellant

*Revel* requires courts to weigh the likely harm to movant absent a stay against harm to the stay opponent. Here, the balance overwhelmingly favors Appellant. Petitioners' alleged harm consists solely of delay, which does not impair their secured position, threaten their collateral, or impair their recovery. Their lien remains fully protected and the underlying asset remains intact.

In contrast, Appellant faces imminent, concrete, and irreversible harm absent a stay. Without a stay, Appellant, beneficiaries of the ESOP, the shareholders, and

the creditors, face imminent liquidation of the Debtor's primary asset, total loss of millions of dollars in property value; total loss of millions of dollars in shareholder value, loss of the Debtor's SEC registration, and loss of unique gaming rights and entitlements. Appellant, as the Debtor's largest creditor, a major shareholder, and its only employee, will suffer severe pecuniary and reputational harm that cannot be remedied after the fact.

The asymmetry is stark. While eight Petitioners face no harm, Appellant and 2,000 shareholders face catastrophic, irreversible consequences. Thus, the balance of hardships weighs decisively in favor of granting a stay.

## IV.    THE PUBLIC INTEREST STRONGLY FAVORS A STAY

### A.    Preventing Liquidation Based on a Potentially Void Judgment

The public interest strongly favors a stay.  Serious, unresolved questions exist as to whether the District Court possessed subject-matter jurisdiction in the Collection Case when that action was filed. A judgment entered without jurisdiction is void and must be vacated. Allowing liquidation of a publicly traded company to proceed on the basis of a potentially void judgment could lead to disastrous results and undermine confidence in the integrity of the bankruptcy system. The public interest requires maintaining the status quo until this threshold jurisdictional issue is resolved. A stay preserves the status quo. A denial destroys it.

### B.    Involuntary Bankruptcy Requires Heightened Scrutiny

An involuntary Chapter 7 Petition is an extraordinary remedy, particularly for a public company. Diamondhead Casino Corporation has been in business for over thirty-five years. Here, the Chapter 7 Order for Relief will destroy the company. It will wipe out the shareholder value of thousands of innocent shareholders and ESOP beneficiaries, destroy the Company's SEC registration, and eliminate an arm's-length sale that would benefit all stakeholders and preserve the Company. Congress imposed strict eligibility requirements under §303(b). If the underlying judgment on which the Petition is based is void, the Bankruptcy Court lacked jurisdiction to enter an Order for Relief. The public interest demands careful appellate review *before* liquidation proceeds. Preserving the Company pending appellate review protects not only Appellant, but all stakeholders and the investing public.

## C.  Ensuring Meaningful Appellate Review

A stay preserves this Court's ability to review the merits without the irreversible consequences of a §363(m) sale. Without a stay, the auction will moot the appeal and foreclose any meaningful review of the jurisdictional and other issues raised, some of which may be precedent-setting. The public interest is not served by mooting an appeal before the Court can consider it, especially where a publicly traded entity is concerned.

The public interest strongly favors a stay in this case because liquidation rests on a potentially void judgment, and the case raises serious issues with broad

economic implications. Involuntary bankruptcy demands heightened scrutiny, especially where thousands of innocent stakeholders face catastrophic losses.

## AFFIDAVITS OR OTHER SWORN STATEMENTS SUPPORTING FACTS SUBJECT TO DISPUTE

The Declaration of Deborah A. Vitale in Support of the Emergency Motion for Stay Pending Appeal and the exhibits attached thereto document the underlying facts relating to lack of subject matter jurisdiction which may be dispositive of this case. The Declaration is included with this motion. [D.I. 16, Case No. 1:25-cv-01022-MN]; [D.I. 9, case No. 1:25-cv-01167-MN].

## RELEVANT PARTS OF THE RECORD

The record in the District Court cases, including the Declaration of Deborah A. Vitale [D.I. 16, Case No. 1:25-cv-01022-MN]; [D.I. 9, case No. 1:25-cv-01167-MN] and the following exhibits attached thereto:

Exhibit A:    Millenium Trust Company, LLC Tranche I Debenture

Exhibit B:    Millenium Trust Company, LLC Tranche II Debenture

Exhibit C:    Wurst Demand Letter: 8-17-16

Exhibit D:    Wurst Demand Letter: 2-12-18

Exhibit E:    Vitale Request for Assignment 4-15-25

Exhibit F:    Vitale Request for Assignment 5-1-25

Exhibit G:    Partial Transcript dated September 3, 2025

Exhibit H:    Letter from Seminole Tribe of Florida, Inc.

Exhibit I:    Land Deed of Trust Recorded 9-26-14

Exhibit J:    Docket Sheet Relating to Millenium Trust Company, LLC

## NOTICE OF THIS MOTION

The Movant has given reasonable notice of this motion to all parties.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court:

1. Issue immediate administrative relief, under Federal Rules of Appellate Procedure 8(a)(2)(D) and 27(c), to preserve the status quo pending full consideration of this motion; or

2. Grant a stay pending appeal of the District Court's Orders entered on December 3, 2025, <u>denying</u> Appellant's Emergency Motions for Stay pending appeal; and

3. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

<u>/s/ Deborah A. Vitale</u>
DEBORAH A. VITALE
Appellant, Pro Se
1013 Princess Street
Alexandria, Virginia 22314
Telephone: (727) 510-1412
Email: vitaledav@aol.com

Dated: January 6, 2026

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned certifies that this Emergency Motion for Stay complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains less than 5,200 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).  This filing complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.  I certify that this document has been scanned for viruses and is virus-free.

Dated: January 6, 2026

 /s/ Deborah A. Vitale
DEBORAH A. VITALE
Appellant, Pro Se
1013 Princess Street
Alexandria, Virginia 22314
Telephone: (727) 510-1412
Email: vitaledav@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2026, a true and correct copy of the foregoing, Appellant's Emergency Motion for Stay Pending Appeal, was served on the following in the manner indicated below:

Served via CM/ECF and Electronic Mail
Jonathan M. Stemerman, Esquire
Armstrong Teasdale, LLP
1007 N. Market Street, 3rd Floor
Wilmington, DE 19801
Email: jstemerman@atllp.com

Served via CM/ECF and Electronic Mail
Bradford J. Sandler, Esquire
Peter J. Keane, Esquire
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801
Email: bsandler@pszjlaw.com
Email: pkeane@pszjlaw.com

Served via CM/ECF and Electronic Mail
Robert D. Goldberg, Esquire
Biggs & Battaglia
921 N. Orange Street
Wilmington, DE  19899
Email: goldberg@batlaw.com

/s/ Deborah A. Vitale
DEBORAH A. VITALE
Appellant, Pro Se
1013 Princess Street
Alexandria, Virginia 22314
Telephone: (727) 510-1412
Email: vitaledav@aol.com